This court has previously denied a motion to withdraw as counsel on the grounds of excessive caseload filed by the Public Defender of the Tenth Judicial Circuit in LaPorte v. State, Second District Court of Appeal Case No. 85-2817. But by order of February 27, 1987, the Public Defender was notified that the motion in LaPorte would nonetheless be treated as a continuing motion to withdraw in all eases in which the Public defender was delinquent in filing briefs. Such a motion is similar to the motion to withdraw from 247 pending criminal appeals filed by the Public Defender which we denied in Haggins v. State, 498 So.2d 953 (Fla. 2d DCA 1986). There having been no objection to treating the motion in that fashion, this order addresses the motion.
The records of this court reflect a backlog of over 400 appeals assigned to the Tenth Circuit Public Defender in which appellants’ briefs are overdue, many substantially overdue. For example, there are at least a dozen appeals in which the briefs are approximately 11 months overdue. The Public Defender has attributed the *1350 problem to a lack of resources due to inadequate funding to adequately staff his office so as to insure the orderly and timely processing of appeals.
The Public Defender’s supplement to the motion to withdraw contains a chart with data concerning the allocations of attorneys in that office during the years 1984-1987 vis-a-vis noncapital appeals (the appeals processed in this court), capital appeals, and trials. From that chart it appears that the number of attorneys assigned to trials and capital appeals increased from 1984 to 1987 but the number of attorneys assigned to noncapital appeals has decreased from 14 at one point down to 11 at the present time. In contrast, the number of noncapital appeals in that office has continued to increase. This court’s records reflect that in 1986, 1047 new non-capital appeal cases were assigned to that office.
It is not within the province of this court to deal with funding for, or the allocation of resources within, the office of the Tenth Circuit Public Defender. However, we have unusual concern because over 50% of this court’s caseload consists of criminal appeals, a percentage apparently not typical of District Court of Appeal caseloads in Florida. That consideration does not appear to have been accounted for adequately in the allocation of funds among appellate public defender offices in Florida. In any event, it is within the province of this court to deal with what the Public Defender’s foregoing supplement to the motion to withdraw refers to as “the abridgment of Appellant’s constitutional rights due to counsel’s inability to timely handle his appeal.” Accordingly, we are compelled to now additionally act by entering this order with respect to the processing of the delinquent appeals by the Public Defender.
150 OLDEST APPEALS
We have reviewed our records with respect to cases in which briefs are more than a month overdue. Some of these cases have overdue records, but in the majority of these cases records have already been filed. Exhibit A attached hereto lists the 150 oldest cases in which briefs are overdue.* The oldest 50 of these cases are listed in paragraph (1), the second oldest 50 of these cases are listed in paragraph (2), and the third oldest 50 in paragraph (3). The Public Defender of the Tenth Judicial Circuit is hereby ordered to file appellants’ briefs in those cases in paragraph (1) by April 27, 1987, in those cases in paragraph (2) by May 27, 1987, and in those cases in paragraph (3) by June 29, 1987.
OTHER DELINQUENT APPEALS
Additionally, because of the great volume of delinquent criminal appeals pending, we deem it necessary to take action regarding the next oldest 150 appeals. While the Tenth Circuit Public Defender has filed with this court information making it appear unrealistic, in view of the apparent staffing situation in his office and the deadline we have imposed as to the 150 appeals referred to above, to impose a deadline in the near future on that Public Defender as to additional cases, there has been no indication from him whether or not emergency funds have been requested or are available for additional resources for the processing of the other delinquent appeals and no indication that the serious back-log problem cannot be solved without extraordinary action by this court.
It may be that the only means at our disposal by which to effectively address the above-described problem would be to relieve the Public Defender of what seems to be its unmanageable caseload. This type of action has precedent. See In re: Directive to the Public Defender of the Seventh Judicial Circuit, (Fla. April 28, 1981) [6 F.L.W. 324]. In that case, the Supreme Court of Florida directed the office of the appellate public defender in the Fifth District to decline to accept any new capital appeals until that office was in a position to file timely briefs and ordered circuit judges within that district to appoint private counsel for indigent defendants for those appeals. In addition, as to some pending *1351 appeals, the Supreme Court relinquished jurisdiction for the appointment of private counsel. In the remainder of the pending appeals dealt with in that case, the Supreme Court ordered the public defender to comply with certain briefing schedules.
Other cases in which Florida appellate courts have acted to relieve public defenders of excessive caseloads include Schwarz v. Cianca, 495 So.2d 1208 (Fla. 4th DCA 1986); Kiernan v. State, 485 So.2d 460 (Fla. 1st DCA 1986); and State ex rel Escambia County v. Behr, 354 So.2d 974 (Fla. 1st DCA 1978).
In Kiernan, the First District, in referring to a desire to avoid additional expense to counties necessitated by the withdrawal of the appellate public defender and the concomitant appointment of special public defenders, said: “However, when that desire is weighed against the indigent defendant’s constitutional right to effective assistance of appellate counsel, the constitutional right must prevail.” 485 So.2d at 462.
In June 1986, we made an effort to alleviate the problem by suggesting in Haggins that the Public Defender file, in the various trial courts within the district, motions to withdraw from appeals. In that manner we sought to encourage resolution of the problem at the local levels where it would be necessary to provide alternative funding for the processing of appeals. That effort, however, appears to have been unsuccessful. In Haggins, we noted the opposition of chairmen of boards of county commissions, county attorneys, chief circuit judges, public defenders, state attorneys, and the attorney general’s office to the appellate public defender’s motion to withdraw.
As did the First District in Kiernan, we sympathize with the individual counties within the district which may be faced with paying for appointed counsel acting as special public defenders to handle appeals for which those counties are not budgeted. Also, we are aware that this district’s office of the criminal appeals division of the attorney general is likely not without problems in this regard. In Kiernan, the First District noted that the primary reasons why the attorney general had been able to stay current were the long delays in the processing of appeals by the public defender. To now somehow break the bottleneck may result in substantial increases in the number of appeals to be processed by the attorney general, as well as by this court which already deals with an annual caseload per judge which, as noted in Kiernan, “greatly exceeds that recommended as the maximum caseload which should be assigned to an appellate judge.” 485 So.2d at 462. But we are left with no alternative. As stated in Kiernan, “It is not within our power to solve the financial problems facing publicly paid attorneys litigating in this court on both sides.” Again, funding is not within this court’s province but protection of constitutional rights is. We take note that at the instigation of the representative from this court on the Judicial Council of Florida, that body has adopted a position urging the legislature to address this ever growing problem.
In entering this order we are contemplating solutions which would minimize the fiscal impact on counties consistent with providing that delinquent appeals be prosecuted on a more timely basis. We do not perceive any action we now contemplate as a long-term solution but rather as only a stop-gap measure. We are not empowered, or equipped, to bring about a long-term solution.
Sections 27.51(4) and 4(b), Florida Statutes (1985), provide that the public defender of the Tenth Judicial Circuit shall handle all felony appeals “on behalf of any public defender with the Second District” that makes a request that he do so. Until the request is made by the local public defender for the Tenth Circuit to handle the appeal, the local public defender is counsel of record in the appeal. We conclude that in an emergency situation such as presently exists in the Tenth Judicial Circuit where the appellate public defender appears unable to handle all of his appeals, the public defenders of the circuits wherein the cases arose may have a continuing duty to process the appeals of those cases.
*1352 Though we realize that the circuit public defenders are not directly funded to handle these appeals, we note that the legislature contemplated a procedure to pursue at least the partial payment of the additional expenses of these appeals at the local level in its enactment of section 27.56, Florida Statutes (1985). That statute provides that a trial court may assess fees and costs against a defendant who has received the assistance of the public defender’s office or a special assistant public defender. § 27.-56(1), Fla.Stat. (1985). As originally enacted, section 27.56, Florida Statutes (1963), provided that the liens created on a defendant’s property were enforceable on behalf of the state. However, now, when payment of those fees or costs is ordered by the trial court, a lien on the real and personal property of the defendant is created in the name of the county in which the services were rendered. § 27.56(2)(a), Fla. Stat. (1985). The trial court’s order is then reduced to a judgment in every county where a defendant resides or owns property. § 27.56(2)(b), Fla.Stat. (1985). The judgment is to be enforced by a county’s board of county commissioners on behalf of the county in which the services were rendered. § 27.56(2)(b) and (4), Fla.Stat. (1985). Thus, the legislature enacted a mechanism whereby counties might receive funding to cover additional expenses in these types of emergency circumstances.
Even so, we fully realize that the local public defenders may not be able to handle all of their respective shares of these delinquent appeals if the Tenth Circuit Public Defender has been discharged from responsibility therefor. In Behr, the First District Court of Appeal relied on Florida Statute 27.53(2) which allows the trial court to appoint special assistant public defenders to represent indigents and provides for fees and costs to be paid as provided in Florida Statute 925.036. Subsection (e) of the latter statute provides specifically for maximum fees for representation on appeal. We realize that Behr was dealing with trial counsel. However, the public defender discharged from responsibility in Behr was the public defender charged with handling all indigent trials within that circuit and Behr stands for the proposition that excessive caseload is a legitimate ground for relieving a public defender who is charged by law in handling certain cases. The method of relief was the appointment of special assistant public defenders. We agree with the First District Court of Appeal which, in Kieman, applied the Behr rationale to appeals. There is nothing in section 27.53(2) which excludes appellate work from the authority given therein to appoint special assistant public defenders. We must conclude that the legislature contemplated the possibility of the necessity of the circuit public defender or a specially appointed assistant public defender handling appeals in the emergency situations we are confronted with here.
Because possible action by this court as to these second oldest 150 appeals could have fiscal impact on all public defenders within this district and on counties within the district, as well as upon the Tenth Circuit Public Defender, we wish to give all affected parties the opportunity to respond before we take action.
In order to deal with this situation and to provide for the expeditious and orderly processing of appeals, we take the following preliminary action with respect to Exhibit B attached hereto which lists the next 150 oldest appeals (not including those from trial courts within the Tenth Circuit) in which briefs are overdue.** As to these cases, it is hereby ordered:
(a) Each local public defender within this district, and any other potentially affected parties, such as county attorneys, county commissions, chief circuit judges, state attorneys, and the attorney general, shall show cause within 30 days why the Tenth Circuit Public Defender shall not be discharged as counsel and shall not be required to forthwith submit the files in those cases to the respective local public defenders who, as we have concluded, are co-counsel, the respective local public de *1353 fenders to file in these cases appellants’ briefs on or before September 30, 1987.
(b) The Tenth Circuit Public Defender shall show cause within 30 days why he shall not in those cases file appellant’s briefs no later than September 30, 1987. To the extent that resources available to that office are said to prevent compliance, that public defender shall show this court why he cannot obtain emergency funding for that purpose. He shall also within that time period show the effect of such potentially scheduled filing of briefs upon his back-log, including the ages of appeals pending.
DANAHY, C.J., and SCHEB, RYDER, CAMPBELL, SCHOONOVER, LEHAN, FRANK, HALL and SANDERLIN, JJ., concur.

 Exhibits are on file in the court.

 Exhibits are on file in the court.